IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**KENTA SHARP,**
        **Petitioner,**

**v.**                                              **Case No.  4:07cv17/MP/MD**

**WALTER A. MCNEIL,**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 12).  Respondent has filed a response, and petitioner has filed a reply.  (Docs. 27 and 29, respectively).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On March 26, 2003, an amended information was filed in the Circuit Court of Leon County, Florida, case number 02-03468, charging petitioner with one count of

felony battery.  (Doc. 20, Ex. A, p. 29).[1]  The victim was Janette Brown, petitioner's girlfriend.  Petitioner's jury trial was held on April 2, 2003.  (Ex. U).  The jury found petitioner guilty as charged.  (*Id.*, pp. 103, 128; Ex. A, p. 31).  On May 22, 2003, petitioner was sentenced to ten years imprisonment as an habitual felony offender.  The court imposed the first five years of the prison sentence as a prison releasee reoffender.  (Ex. A, pp. 34-40; Ex. V).  Petitioner appealed, but his court-appointed appellate counsel found no reversible error in the record and filed a brief in compliance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).  (Ex. C, pp. 2-13).  Appellate counsel requested that the court enter an order allowing petitioner or substitute counsel a reasonable period of time in which to file his own brief.  (*Id.*, p. 12).  On June 7, 2004 petitioner, still represented by appellate counsel, filed a notice of voluntary dismissal.  (Ex. D, p. 15).  Attached to the notice was a notice of voluntary dismissal signed by petitioner himself.  (*Id.*, p. 16).  On June 14, 2004 petitioner's appeal was dismissed.  (Ex. E).

On June 25, 2004, petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, in which he raised three grounds of ineffective assistance of trial counsel.  (Ex. F).  On July 15, 2004, the trial court issued an order summarily denying relief on Grounds 2 and 3, and ordering an evidentiary hearing on Ground 1.  (*Id.*, pp. 61-62).  After an evidentiary hearing, the trial court denied relief on Ground 1 on October 12, 2004.  (*Id.*, pp. 68-90).  Petitioner appealed to the Florida First District Court of Appeal ("First DCA").  His *pro se* initial brief raised one issue – that the trial court fundamentally erred by not appointing counsel to represent him at the evidentiary hearing.  (Ex. H).  On May 11, 2005, the First DCA affirmed the denial order without written opinion.  *Sharp v. State*, 902 So.2d 798 (Fla. 1st DCA 2005) (Table) (copy at Ex. J).  The mandate issued on June 7, 2005.  (Ex. K).

---

[1]Hereafter all references to exhibits will be to those provided at doc. 20 unless otherwise noted.  References to page numbers are to the page of the identified document as it appears on the court's Case Management/Electronic Computer Filing ("CM/ECF") system.

On January 3, 2005, petitioner filed a motion to correct sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure.  (Ex. L).  The motion was denied on March 28, 2005.  (Ex. M).  Petitioner did not appeal.

On August 25, 2005, petitioner filed a second Rule 3.850 motion, raising four claims.  (Ex. N, pp. 4-42).  The trial court summarily denied relief on the merits on August 30, 2005.  (*Id.*, pp. 43-98).  The First DCA affirmed the denial order without written opinion on January 26, 2006.  *Sharp v. State*, 920 So.2d 5 (Fla. 1st DCA 2006) (Table) (copy at Ex. O).  The mandate issued on February 21, 2006.  (Ex. P).

On May 4, 2006, petitioner filed a second Rule 3.800(a) motion.  (Ex. Q, pp. 8-22).  The trial court denied relief on May 11, 2006.  (*Id.*, p. 23).  The First DCA affirmed the denial order without written opinion on November 1, 2006.  *Sharp v. State*, 941 So.2d 371 (Fla. 1st DCA 2006) (Table) (copy at Ex. R).   The mandate issued on November 28, 2006.  (Ex. S).

Petitioner initiated this federal habeas proceeding on January 10, 2007.  (Doc. 1).  He filed an amended petition on June 27, 2007.  (Doc. 12).  Respondent concedes the petition is timely.  (Doc. 27, p. 5).

On November 13, 2007, respondent filed a motion to dismiss arguing that Ground 8 of the amended petition should be dismissed because it failed to state a cognizable ground for federal habeas relief, or the in the alternative, that if Ground 8 was not dismissed the entire petition should be dismissed without prejudice as a "mixed petition" because it presented both an unexhausted claim (Ground 8) and exhausted (or procedurally defaulted) claims.  (Doc. 20).  Petitioner filed a response in which he conceded that Ground 8 was unexhausted, voluntarily dismissed that ground, and requested that the court proceed on Grounds 1-7 of the amended petition.  (Doc. 23).  Accordingly, on January 22, 2008  the court granted the motion to dismiss to the extent petitioner waived/voluntarily dismissed Ground 8, and ordered respondent to file an answer addressing petitioner's remaining claims.  (Doc. 24).  Respondent's response (doc. 27) and petitioner's reply (doc. 29) followed.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our

cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court

believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the

Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## PETITIONER'S GROUNDS FOR RELIEF

The amended petition raises eight grounds for relief.  Seven (Grounds 1-7) are grounded on petitioner's contention that he was denied his constitutional right to the effective assistance of counsel.  Petitioner's eighth claim alleging a sentencing error has been abandoned/waived.

### Clearly Established Federal Law on Claims of Ineffective Assistance of Counsel

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v.*

> ***Thomas***, **46 F.3d 1506], 1522 (en banc).   Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.   *Chandler* at 1314 (footnote omitted).   Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.   Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.**

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.,* at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

Ground 1.   <u>Failure to move to suppress 911 call audiotape due to dispatcher's "interpretive" comment.</u>

Petitioner faults trial counsel for failing to file a pre-trial motion to suppress the audiotape of Ms. Brown's 911 call on the basis that it was "partially indiscernible" and "invoked the call dispatcher's interpretive testimony of the caller stating 'He kicked in a door and got in the house,'" when the caller's words were, in

fact, indiscernible at that point.   (Doc. 12, p. 11).   Petitioner asserts he was prejudiced because it "poisoned" the jurors' minds "with the image of Defendant breaking into the home of the victim, although Defendant had never before during the trial been properly identified as the perpetrator of these acts, and was improperly considered to corroborate the later testimony of the victim."  (*Id.*).

The audiotape of Ms. Brown's 911 call was admitted into evidence and published to the jury.  (Ex. U, pp. 28-31).  The court reporter's transcription of the recording as it was played to the jury is part of the trial transcript.  The portion to which petitioner refers is as follows:

>   OPERATOR:  What is Fair Oak Lane off of?
>
>   CALLER [MS. BROWN]:  (Indiscernible)
>
>   OPERATOR:  What is that off of, ma'am?
>
>   CALLER:  (Indiscernible)
>
>   OPERATOR:  Get somebody there quick.   I don't know what it is. Hello?  It's Fair Oak Lane.
>
>   CALLER:  (Indiscernible)
>
>   OPERATOR:  He kicked in a door and got in the house.
>
>   CALLER:  (Indiscernible)
>
>   OPERATOR:  Hello?
>   (Whereupon, the tape concluded)

(Ex. U, pp. 29-30).

   <u>State Court Decision</u>

Petitioner presented this claim in his second Rule 3.850 motion.  The trial court denied relief, as follows:

>   The Defendant alleges ineffective assistance of counsel in that counsel Charles Hobbs failed to move to suppress a 911 tape.  Such motion, if made, would not have been granted.  It was a 911 tape of the

victim.  The victim testified.  The actual tape was in evidence, and whether parts of the tape were not discernible to the court reporter as it was played to the jury is irrelevant in this case, given the nature and simplicity of the call.  It was a tape recording of the crime, of defendant kicking down the bathroom door and punching the victim.  The door pictures and pictures of victim support the tape, as well as the officer observing the same.  (Tr. p. 27-43, 47-48).  The tape was a 911 call, a classic exception to hearsay.  The tape was obviously authentic, not unfairly unintelligible, and the caller/victim was cross-examined about the call.  This Court would not have suppressed this tape.

(Ex. N, p. 43).

<u>Federal Review of State Court Decision</u>

The judge presiding over petitioner's Rule 3.850 proceeding was the judge who presided over petitioner's trial.  She heard the audiotape first hand.  The Rule 3.850 court found as fact that the relevant portions of the audiotape, including sounds of the door being broken down and of Ms. Brown being punched, were audible to the jury; that the audiotape conveyed the sounds of the battery as it was occurring; and that Ms. Brown was cross-examined about the recording.  Petitioner does not dispute any of these findings.  Although he asserts that the recording was "partially indiscernible" in that some of Ms. Brown's statements were inaudible (which is confirmed by the trial transcript), he does not dispute that the sounds of the door being kicked in and of Ms. Brown being punched were audible and capable of being understood by the jury.  Indeed, he admits to this court that he kicked in the door (albeit for the alleged purpose of disarming Ms. Brown and rescuing his infant son).  (Doc. 12, p. 18).  Also audible on the audiotape is Ms. Brown's identification of petitioner.  (Ex. U, pp. 28-29).[3]

Based on these undisputed findings, the state court concluded that the audiotape was not unfairly unintelligible; that the audiotape was relevant and admissible under state law; and that any attempt to exclude the audiotape would

---

[3]Contrary to petitioner's assertion, witness testimony identified him as the perpetrator both before and after the audiotape was played.  (Ex. U, pp. 17, 19-22, 30-35).

have been unsuccessful.  *See Martinez v. State*, 761 So.2d 1074, 1083 (Fla. 2000) ("The general rule in Florida regarding admissibility of partially inaudible tape recordings is that partial inaudibility or unintelligibility is not a ground for excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible.  Such recordings are admissible unless the inaudible and unintelligible portions are so substantial as to deprive the audible portions of relevance.").

Petitioner's argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law.  That is not something this court will do, as federal habeas courts must defer to state courts' legal conclusions on matters of state law.  In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.  In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial.  *Id.* at 1354-55.  The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient.  *Id.*  The Eleventh Circuit held: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"  *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in *Herring*, the state court has answered the question of what would have happened had petitioner's counsel moved to suppress or exclude the audiotape based on the inaudibility of Ms. Brown's statement and the 911 dispatcher's comment - the motion would have been denied.  Therefore, counsel cannot be faulted for having failed to make that motion.  And since counsel would

have failed had he acted as petitioner contends he should have, petitioner cannot show prejudice.  Indeed, petitioner's specific assertion of prejudice – that without the 911 dispatcher's comment the juror's minds would not have been "poisoned" with the image of him kicking in the door – is rebutted by: (1) the state court's undisputed finding that those sounds were audible regardless of whether Ms. Brown's statement was indiscernible; (2) the photographs of the door off its hinges and lying on the floor (Ex. A, pp. 62-65; Ex. U, p. 34); and (3) witness testimony that petitioner kicked or pushed in the door (Ex. U, pp. 34-35; p. 48).

Based on the foregoing, this court cannot say that the state court's ruling resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Ground 2.    <u>Failure to present any witnesses to support defense theory of self-defense.</u>

Petitioner asserts counsel was ineffective for failing to call any witnesses to support his theory of self-defense.  In particular, petitioner asserts that his brother Keith Sharp was available to testify that petitioner acted in self-defense during the altercation with Ms. Brown.  (Doc. 1, pp. 5, 13).

<u>State Court Decision</u>

In petitioner's second Rule 3.850 motion he claimed that counsel was for ineffective for failing to "present any witnesses or evidence to support the theory of self defense. . . ."  (Ex. N, pp. 11, 13).  The state court denied relief as follows:

> The Defendant claims counsel was ineffective for failing to present or argue self-defense.  There are no witnesses alleged by defendant that did not testify at trial.  Defendant chose not to testify, an obvious witness to self-defense.  Defendant stated for the record in a 3.850 inquiry that he agreed with the decision to not testify himself or call any other witnesses.  (Tr. 53-56)  The defense effectively argued reasonable doubt and self-defense. (Tr. 72-92) Defense counsel clearly developed a factual basis for this argument by the cross-examination of the victim and the only other witness other than Defendant.  (Tr. 23-25; 36-40; 43)

(Ex. N, pp. 43-44).

### Federal Review of State Court Decision

Respondent asserts that this ground was "generally exhausted" in that petitioner's second Rule 3.850 motion raised a general claim that counsel failed to present any evidence of self-defense.  That post-conviction claim, however, did not present the specific factual contention that petitioner's brother Keith Sharp was willing and available to testify that petitioner acted in self-defense.  Therefore, that particular factual basis was not "fairly presented" in the second Rule 3.850 motion and was not exhausted through that effort. It was, however, presented in petitioner's first Rule 3.850 motion, but as discussed in Ground 5 *infra*, that claim is procedurally defaulted.  (Doc. 27, pp. 11-12).

Respondent is correct that habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that to satisfy the exhaustion requirement, a petitioner must have presented the instance of ineffective assistance that he asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation" ) (internal quotation marks omitted); *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207 (11th Cir. 1992).  Where a petitioner raises an ineffective assistance of counsel claim in the state court, but alleges different supporting facts than in his federal habeas proceeding, he will be deemed to have failed to fairly present the federal claim to the state court.  *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").  "Allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to

federal court to allege additional instances would be contrary to the state's 'full and fair opportunity to address the claim on the merits.'  The state would never have the benefit of evaluating the claim using a fully developed set of facts.  This would not be the 'serious and meaningful' exhaustion of claims that Congress intended." *Footman*, 978 F.2d at 1211.  "Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief."  *Kelley v. Secretary*, 377 F.3d 1317, 1344 (11th Cir. 2004).

In light of the foregoing, to the extent petitioner seeks federal habeas review of the state court's adjudication of Ground 2 of his second Rule 3.850 motion, the court will consider only his general contention that counsel failed to call any witnesses to support the theory of self-defense.  To the extent petitioner seeks federal habeas review of the state court's adjudication of Ground 2 of his <u>first</u> Rule 3.850 motion which claimed ineffective assistance for counsel's failure to call Keith Sharp to testify that petitioner acted in self-defense, that claim will be discussed later in Ground 5, *infra*.

As to petitioner's general claim, the state court found, and the record demonstrates, that petitioner chose not to testify and not to call any witnesses. (Ex. U, pp. 53-56).  After denying the motion for judgment of acquittal, the court engaged in the following inquiry:

> THE COURT:  Any other  matters?  We need to determine if the defendant [is] going to testify.
>
> MR. HOBBS [defense counsel]:  No, Your Honor.
>
> THE COURT:  Mr. Sharp, I have some questions I want to address to you directly.  I'm given to understand that it's your decision not to testify, is that correct?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Do you understand that you do of course have the right

to remain silent and not give testimony, and I will instruct the jury that they are not to consider that in any way, that the State always has the burden of proof.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  On the other hand, it is your case, and this may be your only opportunity to take the stand and testify about what happened that day.  The evidence before the jury is what is going to get to be argued.  If you're silent, there is no evidence from you for them to consider.  They can't speculate on what you might have said.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I will instruct them that they are to consider only the evidence produced in the form of testimony and exhibits introduced into evidence.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand that later, after this trial is over, whatever the result, if they find you guilty, that it will be too late later to say oh, gee, I made a mistake.  I should have testified.  Or gee, I shouldn't have followed by lawyer's advice.  I should have testified.

Do you understand your lawyer's advice about whether to testify or not is just that, it is advice, and it is your choice in the end to decide whether or not you should testify.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And I'm not interested in knowing all the reasons why or why not.  I know there are lots of things going on on both sides, and it would be improper for me to inquire into that, because it would violate the privacy of your relationship with your attorney, and I'm not interested in that.

The only thing I'm interested in knowing is that you have thought about the consequences of testifying or not testifying, and that your decision not to testify is made of your own free will.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Do you have any questions at all of the Court?

THE DEFENDANT:  No, ma'am.

(Ex. U, pp. 53-55).  The court then inquired whether the defense would be calling

any witnesses:

THE COURT:  Will there be any other witnesses called?

MR. HOBBS [defense counsel]:  Your Honor, I don't believe so.  I believe we're going to – hold on one second, Your Honor.

THE COURT:  Do you want to consult with your client?

MR. HOBBS:  Yes, ma'am.

THE COURT:  Sure.

. . . .

MR. HOBBS:  [W]e're not going to put on any evidence.  We'll rest at this time and proceed to closing argument.

THE COURT;  Mr. Sharp, I want to go ahead and do that part of my inquiry.  Do you understand that even if you don't testify, of course you do have the right to have witnesses called and subpoenaed to testify, and then that would be part of the evidence.  I have no idea what they would say.  I don't know.  There's pro and cons, I'm sure, in calling anybody else or recalling anybody else, but do you agree with the decision not to call any further witnesses?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And again, are you making this decision of your own free will?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And, do you have any concerns about your attorney having failed to talk to witnesses that may know something firsthand

about this case and didn't call them today, or failed to investigate the case in any way that you can think of?

THE DEFENDANT:  No, ma'am.

THE COURT:  All right.  So be it.

(Ex. U, pp. 55-56).   Petitioner's statements at trial demonstrate that counsel investigated petitioner's case, including talking to potential witnesses; that there were no known witnesses having personal knowledge of the incident that counsel should have interviewed and called, but didn't; and that petitioner agreed with the decision not to call any witnesses.

The trial transcript further demonstrates that although defense counsel did not call any witnesses, he developed a factual basis supporting the theory of self-defense through cross-examination of Ms. Brown and Ms. Arnett.  During cross-examination of Ms. Brown counsel elicited testimony that earlier in the day she had chased petitioner with a knife, and that she had provoked the subsequent physical altercation which led to petitioner hitting her by hitting him first.  (*Id.*, pp. 38, 43).  Counsel elicited similar statements from Ms. Arnett.  (*Id.*, pp. 24-25).

Based on all of the foregoing, the state court reasonably concluded that petitioner failed to establish deficient performance.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Ground 3.    Failure to object to "court becoming active participant in trial, presenting evidence by questioning witness."

This ground for relief is based on the following exchange between the prosecutor, State's witness Ms. Arnett and the trial court:

Q [Prosecutor Ms. Lotane]:  Mr. Sharp, your cousin, Kenta Sharp, do you see him in the courtroom today?

A [Witness Ms. Arnett]:  Yes.

Q:  Can you point him out for us, please?

A:  (Indicating)

MS. LOTANE:  Judge, I'd ask the record to reflect the witness has identified the defendant.

THE COURT:  Is it the gentleman in the white shirt?

THE WITNESS:  Yes.

THE COURT:  The record will then so reflect.

(Ex. U, p. 22).  Petitioner's amended petition asserts that defense counsel was ineffective for failing to object to the judge's question, arguing that the court "bec[ame] an active participant in the prosecution of the case by presenting incriminating evidence during the trial by questioning Ms. Arnett," and that absent the court's question, there would have been "insufficient [evidence] to overcome reasonable doubt regarding identity. . . ."  (Doc. 12, pp. 5, 15-16).

Petitioner presented this ground for relief in his second Rule 3.850 motion. The court denied the claim as frivolous.  (Ex. N, p. 44).  Petitioner now agrees.  In his reply to respondent's answer, petitioner states, "petitioner does not wish to address this issue of Ground Three and agrees that the issue is frivolous."  (Doc. 29, p. 9). Given petitioner's concession that this claim is without merit, the court finds that the state court's denial of relief did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.[4]

---

[4]Even absent petitioner's concession, the state court was not unreasonable in finding this claim frivolous.  The trial court did not present evidence of identification, it simply required the witness to clarify who she was pointing to.  Counsel cannot be deficient for failing to make a frivolous objection.  *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit);

**Ground 4.   Stipulation to admission of 911 call audiotape.**

This claim is a variation of Ground 1 above, except petitioner now faults counsel for stipulating to admission of the audiotape, arguing that the audiotape would not otherwise have been admitted because it was inaudible and incapable of authentication.   Petitioner asserts that absent the audiotape, "the inculpatory interpretation referred to in an earlier claim would never have been heard by the jury, and employed to corroborate the victim's testimony."  (Doc. 12, pp. 5, 17).

Petitioner presented this claim to the state court in his second Rule 3.850 motion.  The state court denied relief as follows:

> Defense counsel was not ineffective for stipulating to the tape's authenticity.  There is no claim the tape was not authentic.  The victim testified that she made the call and effectively authenticated the call. (Tr. 33)  The tape was not unfairly inaudible in the context of this case.

(Ex. N, p. 44).

Petitioner now agrees that this claim is without merit.   In his reply to respondent's answer, he states, "Petitioner does not wish to address this issue of Ground Four and agrees that the issue is frivolous."  (Doc. 29, p. 9).   Given petitioner's concession, the court finds that the state court's denial of relief did not result "in a decision that was contrary to, or involved an unreasonable application

---

*Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence).

Furthermore, even assuming to petitioner's benefit that had counsel objected the court would have stricken her question and instructed the jury to disregard it, petitioner has not established a reasonable probability that the result of the proceeding would have been different.  The prosecutor would have directed Ms. Arnett to clarify who she was pointing to (as the prosecutor did with Ms. Brown, (ex. U, p. 31)), and Ms. Arnett would have done so.  And even without Ms. Arnett's in-court identification of petitioner, there was overwhelming evidence establishing petitioner as Ms. Brown's assailant:   (1) Ms. Brown's in-court identification of petitioner; (2) Ms. Brown's identification of petitioner on the 911 tape; and (3) Ms. Arnett's and Ms. Brown's separate identifications of petitioner in their respective statements to police. This, too, forecloses petitioner's ability to establish prejudice.  Accordingly, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra.* Petitioner is not entitled to federal habeas relief, and the writ should not issue.

*Case No: 4:07cv17/MP/MD*

of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.
Petitioner is not entitled to federal habeas relief, and the writ should not issue.[5]

  **Ground 5.** **Failure to call petitioner's brother Keith Sharp as a defense**
       **witness.** **(Doc. 12, pp. 9, 18).**

  **Ground 6.** **Failure to adequately move for judgment of acquittal to preserve**
       **sufficiency of the evidence arguments for appellate review.** **(Doc.**
       **12, pp. 9, 20-21).**

  **Ground 7.** **Misadvice concerning petitioner testifying (that the nature of**
       **petitioner's prior record would be revealed to the jury if he**
       **testified).** **(Doc. 12, pp. 10, 22-23).**

    **In these three grounds for relief, petitioner claims trial counsel was ineffective**
for failing to investigate and call Keith Sharp as a defense witness, failing to
preserve sufficiency of the evidence arguments for appellate review, and
misadvising petitioner about the consequences of testifying. Petitioner raised all
three issues in his first Rule 3.850 motion. (Ex. F, pp. 23-35). The Rule 3.850 court

---

[5]Even absent petitioner's concession, he would not be entitled to federal habeas relief. The
Rule 3.850 judge found that the audiotape was not unfairly inaudible, and that Ms. Brown effectively
authenticated the call. As discussed in Ground 1, *supra*, the state court's finding concerning
substantial audibility is presumed correct. Based on this finding, it was not objectively unreasonable
for the court to conclude that counsel was not deficient for failing to object on grounds of
inaudibility.

  Similarly, petitioner fails to establish that counsel's failure to object on grounds of authenticity
was objectively unreasonable. Under Florida law, proper authentication requires "confirmation, by
a participant in the conversation, that the tape fairly and accurately memorialized the discussion at
issue. . . ." *McCoy v. State* 853 So.2d 396, 403-04 (Fla. 2003) (citing Charles W. Ehrhardt, Florida
Evidence § 401.4 (2002 ed.)). Petitioner's argument in his amended petition, while not altogether
clear, appeared based on the notion that it is impossible to authenticate an inaudible audiotape. (Doc.
12, p. 17) ("Unless the actual conversation being recorded was unintelligible, the tape could not be
as [sic] an accurate reproduction of said conversation."). Petitioner's argument fails in light of the
state court's finding that the audiotape was substantially audible. Furthermore, Ms. Brown testified
that she made the 911 call. She did not directly confirm its authenticity because she was not asked
to do so. Petitioner does not contend, much less offer evidence, that neither Ms. Brown nor Officer
Bethea (the 911 dispatcher) could have properly authenticated the audiotape if asked. Thus, petitioner
has not established that counsel was deficient in failing to attempt to exclude the audiotape. As the
state court indicated, that would have been a fruitless exercise. This determination further prevents
petitioner from establishing prejudice.

granted an evidentiary hearing, which was held on October 7, 2004, on the claim of counsel misadvising petitioner concerning the consequences of testifying. (*Id.*, pp. 61-62). The trial court summarily denied petitioner's two remaining claims. (*Id.*). After the evidentiary hearing, the trial court denied relief on the remaining "misadvice" claim. (*Id.*, pp. 68-90). Petitioner appealed from the denial of his motion. (*Id.*, p. 91). In his initial brief he argued one issue, that the lower court committed fundamental error in denying him the opportunity to be represented by defense counsel at his evidentiary hearing. (Ex. H). The appellate court affirmed without written opinion.

Respondent contends Grounds 5-7 are procedurally defaulted because petitioner's appeal followed an evidentiary hearing, and, therefore, he was required to address them in his initial brief pursuant to Florida Rule of Appellate Procedure 9.141(b)(3). Petitioner did not address these claims in his initial brief, but instead argued only that the Rule 3.850 court erred by denying his request for appointment of counsel for the evidentiary hearing. By failing to address these claims in his initial brief petitioner abandoned them, and they are now procedurally defaulted. Respondent is correct, and petitioner now appears to agree. In his reply, he states, "Petitioner agrees that these three issues were exhausted and can not be addressed for that purpose." (Doc. 29).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[6] thereby giving the State the "'opportunity to pass upon and correct'

---

[6]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991) (holding that "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . .[,] there is a procedural default for purposes of federal habeas. . . ."). To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."

---

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).   Lack of counsel or ignorance of available procedures is not enough to establish cause.   *Tower v. Phillips, supra.*   To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."   *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995).   "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."   *Schlup*, 513 U.S. at 327.   Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.   To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Where, as here, petitioner received an evidentiary hearing, he was required to file an appellate brief.   *See* Fla. R. App. P. 9.141(b)(3).   He did file a brief, and his failure to address Grounds 5, 6 and 7 in his brief constituted a waiver of those issues in the state court.   *See, e.g., Sweet v. State*, 810 So.2d 854, 870 (Fla. 2002) (holding that claims raised on appeal from order denying post-conviction relief were procedurally barred where petitioner received an evidentiary hearing on his Rule 3.850 motion (albeit not on those particular claims), and failed to fully brief the claims on appeal); *Duest v. Dugger*, 555 So.2d 849, 851 (Fla. 1990) (holding that issues raised on appeal from order denying post-conviction relief were procedurally barred where petitioner received an evidentiary hearing on his Rule 3.850 motion and failed to fully brief and argue the points on appeal).   Therefore, Grounds 5, 6 and 7 are procedurally defaulted.   *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that petitioner, who had received an evidentiary hearing on his Rule

3.850 motion, procedurally defaulted his right-to-testify claim when he failed to argue it in his initial brief on appeal from the denial order; raising it in his reply brief was not proper exhaustion); *see also Cortes v. Gladish*, 216 Fed. Appx. 897, 899-900 (11th Cir. 2007) (stating that had the petitioner received an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those issues, and they would be considered procedurally defaulted).

Petitioner has made none of the requisite showings to excuse his default. Therefore, he is not entitled to federal habeas review of these claims.

**Ground 8.   Sentencing error.**

As previously discussed, petitioner has abandoned/waived this ground for relief.  (Doc. 23).  Therefore, the court will not consider it.

Accordingly, it is respectfully RECOMMENDED:

That the amended petition for writ of habeas corpus (doc. 12), challenging the conviction and sentence in *State of Florida v. Kenta Sharp* in the Circuit Court of Leon County, Florida, case no. 02-03468, be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 9th day of March, 2009.


/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).